UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| WILLIAM MCKNELLY and, <br> LOUISE MCKNELLY, <br>     Plaintiffs, <br> v. <br> WYNDHAM DESTINATIONS, INC., <br> WYNDHAM VACATION <br> RESORTS, INC., <br> WYNDHAM VACATION <br> OWNERSHIP, INC., and <br> JOHN DOE, <br>     Defendants. | No.: 3:19-CV-103-TAV-DCP |

## MEMORANDUM OPINION AND ORDER

This civil case is before the Court on defendant Wyndham Vacation Resorts, Inc.'s Partial Motion to Dismiss [Doc. 12].[1] Defendant moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of plaintiffs' claims for breach of contract [Doc. 10 ¶ 156–71] and anticipatory breach [*Id.* ¶ 199–210]. Plaintiffs responded, voluntarily dismissing their claims for breach of oral contract but otherwise opposing the motion [Docs. 16, 17]. Defendant replied [Doc. 18]. Thus, this motion is fully briefed and ripe for disposition. Because plaintiffs have failed to allege facts sufficient to allow the

---

[1.] The Court notes that although the motion [Doc. 12] is styled as submitted by all Wyndham defendants, the motion seeks to dismiss claims which are only asserted against defendant Wyndham Vacation Resorts, Inc. [*see* Doc. 10-1 ¶¶ 156–71, 199–210].

Court to reasonably infer that defendant failed or refused to perform pursuant to an obligation imposed upon it by the parties' contracts, the motion will be **GRANTED**.

I.  **Background**[2]

Defendant Wyndham Vacation Ownership, Inc. ("WVO") is the parent company of defendant Wyndham Vacation Resorts, Inc. ("WVR") and is a member of defendant Wyndham Destinations, Inc.'s family of companies [Doc. 10 ¶ 19]. Defendants WVR and WVO market, sell, and finance "Vacation Ownership Interests" ("VOIs"), provide property management services to property owners' associations, and develop vacation ownership resorts [*Id.* ¶ 18]. Plaintiffs are individuals who reside in Illinois [*Id.* ¶ 1].

The amended complaint [Doc. 10] alleges a general scheme created and carried out by defendants to defraud prospective and current owners of timeshare interests [*Id.* ¶¶ 22–124]. The alleged scheme included the following: the use of deceptive and high-pressure tactics in the sale of VOIs, including a rushed closing process designed to hide certain material terms of the contract and cause confusion and misunderstanding among the purchasers; the institution of a "points" system that highly diluted ownership of VOIs; and defendants' total control of inventory and manipulation of reservations to deny timeshare owners access to accommodations [*Id.*].

Plaintiffs allege that on or about February 1, 2015, while vacationing in Sevierville, Tennessee, they were invited to what they were told was a short (no longer than ninety (90)

---

[2.] The factual background is discussed in the light most favorable to plaintiffs in accordance with the Rule 12(b)(6) standard. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

minute) presentation on defendants' new ownership program's features [*Id.* ¶ 126]. However, the presentation was in fact a multi-hour, high-pressure sales pitch [*Id.*]. During this event, plaintiffs encountered defendant Doe, an agent of the Wyndham defendants [*Id.* ¶ 127]. Defendant Doe convinced plaintiffs to purchase a VOI [*Id.* ¶ 128].

Plaintiffs summarize various misrepresentations made by defendant Doe at the presentation, including saying that she would assist them in using their timeshares in the future, that the deal she was offering was only good for that day, that plaintiffs could rent out their timeshares to cover all their costs, that the "points" associated with their timeshare interests were useful in buying airline tickets and renting vehicles, and that plaintiffs would be enrolled in a buyback program [*Id.* ¶¶ 129–33]. Plaintiffs relied upon these statements in purchasing a VOI [*Id.* ¶¶ 128, 137]. Plaintiffs assert that defendant Doe "tricked [them] into signing documents that often contradicted the sales agents' statements" [*Id.* ¶¶ 134, 135] and that defendant Doe's supervisor and/or a Wyndham executive vice president directed these statements be made and knew of their falsity [*Id.* ¶¶ 135–36].

Plaintiffs do not have copies of the contract they entered into with defendant on February 1, 2015, or any other of the "several contracts" to which they refer in their complaint [*Id.* ¶ 157]. Also, they do not know the exact amount of money they have paid to Wyndham throughout their dealings, but they estimate that they have paid Wyndham at least $230,000 in the form of mortgages, maintenance fees, and interest [*Id.* ¶ 125].

In the amended complaint, plaintiffs also discuss defendants' "retaliation" against them for filing a complaint [*Id.* ¶¶ 121–24]. Specifically, on February 9, 2017, counsel for

defendants sent a letter to plaintiffs' counsel, apparently in response to "dozens of letters from [plaintiffs' counsel] on behalf of Wyndham Owners [asserting that the owners] were induced to enter into purchase transactions with Wyndham Vacation Resort, Inc. in reliance on alleged misrepresentations made to the owners by Wyndham personnel at the time of sale" [Doc. 10-1; *see also* Doc. 10 ¶¶ 121–22]. In the letter, defendants' counsel states:

> Since these owners claim that they would never have made the purchases in question but for Wyndham's alleged misconduct, in an effort to accommodate these owners, Wyndham intends to place a freeze on their accounts. Likewise, Wyndham will cease automatic withdrawals for outstanding loan payments and fees. Consequently, these owners will no longer be able to book accommodations using their points and all existing reservations will be cancelled. Wyndham will also cease receiving automatic withdrawals to cover outstanding loan payments and maintenance fees. Wyndham will take these steps immediately for all owners for whom Wyndham receives demand letters from you in the future. As to those owners for whom Wyndham has previously received a demand letter, these steps will be taken effective February 28, 2017.
>
> If, despite allegations that these purchases were fraudulently induced, an owner you represent wishes to continue to travel and use his or her points, please let me know so that we may discuss this request.

[Doc. 10-1].

Plaintiffs' counsel responded in a letter dated February 17, 2017 [Doc. 16-2; *see also* Doc. 10 ¶ 123], requesting that plaintiffs' account not be frozen and seeking further assurances that the account in fact would not be frozen [Doc. 16-2; *see also* Doc. 10 ¶ 123]. Defendants have not responded to plaintiffs with information about the status of plaintiffs' account [Docs. 10 ¶ 124; 16 p. 4].

Based on the foregoing factual allegations, plaintiffs assert four claims in their amended complaint: (1) fraud in the inducement against all defendants, (2) breach of

contract against defendant WVR, (3) violation of the Tennessee Timeshare Act against all defendants, and (4) anticipatory breach against WVR. For the reasons discussed herein, plaintiffs' claims for breach of contract and anticipatory breach will be **DISMISSED**.

## II. Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Thus, a complaint filed in federal court need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do"; nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation"; nor will "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (second alteration in original) (quoting *Twombly*, 550 U.S. at 557). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). And a complaint which contains "a statement of facts that merely creates a *suspicion* of legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Twombly*, 550 U.S. at 555).

5

In deciding a Rule 12(b)(6) motion, a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.* at 679. In conducting this inquiry, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop*, 520 F.3d at 519 (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

### III. Analysis

Defendant moves to dismiss plaintiffs' claims for (1) breach of contract and (2) anticipatory breach. The Court will address each claim in turn.

#### A. Breach of Contract

Defendant argues that plaintiffs have not pled facts sufficient to allow it to ascertain the nature of the alleged nonperformance or the nature and amount of damages [Doc. 13 p. 3]. Specifically, defendant argues that while the amended complaint alleges that defendant breached the parties' contracts by changing, eliminating, or failing to provide certain benefits and services, plaintiffs "fail to set out precisely what provision(s) of the [VOI]

6

contract was/were breached and the precise nature of the breach(es)" [*Id.* (citing Doc. 10 ¶ 162)].

Plaintiffs respond that, in light of the fact that they do not have copies of the contracts upon which this claim is based, they have asserted "as best as they possibly can" that (1) defendant breached the implied covenant of good faith and fair dealing and (2) defendant breached the "totality of the contract" by unduly restricting plaintiffs' use and occupancy rights [Doc. 16 p. 2].

In the context of a motion to dismiss, a breach of contract claim must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery. *Twombly*, 550 U.S. at 562. Under Tennessee law,[3] those elements are: "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 281 (6th Cir. 2018) (quoting *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011)).

"It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *KSA Enters. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 460 (6th Cir.

---

[3] It appears, based on the filings, that the parties agree that Tennessee substantive law applies. The Court will apply Tennessee law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999); *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989).

2019) (quoting *Northampton Rest. Grp. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 522 (6th Cir. 2012) (holding that "without the contracts or reference to specific language, [plaintiff] failed to put forth a plausible claim for [breach of contract]")); *Harris v. Am. Postal Workers Union*, 198 F.3d 245, 1999 WL 993882, at *4 (6th Cir. 1999) (unpublished table decision).

Plaintiffs allege that the parties formed "several" contracts [Doc. 10 ¶ 157]. But, as the Court has noted, plaintiffs do not possess copies of these contracts [Docs. 10 ¶ 157; 16 p. 2–3] and thus have not attached any copies of their contracts with defendant to their original or amended complaints. While the failure to attach the contracts is not necessarily fatal to a breach of contract claim, the complaint must include the language of specific contract provisions which defendant has allegedly breached. *Global Fleet Sales, LLC v. Delunas*, No. 12-15471, 2014 WL 634075, at *11 (E.D. Mich. Feb. 18, 2014) (citing *Northampton Rest. Grp.*, 492 F. App'x at 521); *see KSA Enters.*, 761 F. App'x at 460. Plaintiffs' complaint does not.

Rather, plaintiffs' allegations of defendant's nonperformance are vague, naked assertions that do not correspond to a defined contractual obligation. The complaint alleges that under the terms of the contracts, defendant was to "provide certain benefits and services and perform certain obligations" [Doc. 10 ¶ 159] but that defendant "breached said contracts by failing to provide, changing or eliminating material benefits and services" [*Id.* ¶ 162] and they "were damaged as a result of said breaches" [*Id.* ¶ 170]. This description of the terms of the contracts, the alleged nonperformance, and the alleged damages is so

8

lacking in specificity that it could conceivably apply to any contract. As such, it amounts to no more than a mere "formulaic recitation of the elements" of a breach of contract claim, *Iqbal*, 556 U.S. at 678, "devoid of further factual enhancement." *Id.*; *see also Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 495 (6th Cir. 2019) (holding that a plaintiff does not adequately plead a breach-of-contract claim where the complaint alleges that defendant "breached the contract by breaching the contract").

While plaintiff does provide some factual allegations about actions of defendant that could constitute non-performance (i.e., defendant's representatives ignored plaintiffs' phone calls and defendants denied reservations at certain times) [Doc. 10 ¶ 164–65], given the lack of reference to any language of the contract imposing an obligation to perform differently, the Court concludes that plaintiffs have failed to put forth a plausible claim for relief in their amended complaint. *See Northampton Rest. Grp.*, 492 F. App'x at 522. Indeed, plaintiffs' response, in which they argue that the "*totality* of the contract" was breached by some unspecified interference with their use and occupancy of certain accommodations [Doc. 16 p. 2 (emphasis added)], underscores the Court's conclusion that plaintiffs have failed to allege facts sufficient for the Court to reasonably infer defendant failed to perform in accordance with some *defined contractual obligation*. *Franklin Am. Mortg. Co.*, 910 F.3d at 281. Thus, the factual allegations are insufficient to "raise a right

9

to relief above a speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs' claim for breach of contract therefore cannot survive defendant's motion to dismiss.[4]

Plaintiffs' claim for a breach of contract on the theory that defendant breached the covenant of good faith and fair dealing [Doc. 10 ¶ 167; Doc. 16 p. 2] likewise fails. Under

---

[4.] Defendant attached a contract between the parties dated June 22, 2015 [Doc. 12-1] to its motion to dismiss, and thus, in their response, plaintiffs point to paragraph four of that contract in support of its argument that it has a viable breach of contract claim [*Id.*; Doc. 12-1 ¶ 4 (describing owners' rights to access and use defendant's properties)]. Plaintiffs argue that this provision states that they have the right to use and occupy the "Club Accommodations" and assert that the complaint sets out "numerous times" how defendant prevented them from "using and occupying these properties in the way in which they contracted" [Doc. 16 p. 3].

Plaintiffs' pointing to specific provisions of this contract in their response to defendant's motion to dismiss does not save their breach-of-contract claim from dismissal. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (citing *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y.1977); *Sansom Comm. v. Lynn*, 366 F. Supp. 1271, 1278 (E.D. Pa. 1973); *Chambliss v. Coca-Cola Bottling Corp.*, 274 F. Supp. 401, 409 (E.D. Tenn. 1967), *aff'd on other grounds*, 414 F.2d 256 (6th Cir. 1969)); *see, e.g.*, *Muscogee Creek Indian Freedmen Bank, Inc. v. Bernhardt*, 385 F. Supp. 3d 16, 20 (D.D.C. 2019) (holding plaintiffs could not present new fact in response to motion to dismiss); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 573 (D. Md. 2019) (holding plaintiffs could not allege new fact in brief in opposition to motion to dismiss); *Ullery v. Raemisch*, No. 18-CV-00839-STV, 2019 WL 529570, at *12 (D. Colo. Feb. 9, 2019) (finding plaintiff could not add new claim in response to motions to dismiss)." And a plaintiff cannot rely on the potential that, through the discovery process or otherwise, it might "find the contracts in dispute *after* filing suit." *Northampton Rest. Grp.*, 492 F. App'x at 522. Rather, the plaintiff is "required to allege facts sufficient to make its breach-of-contract claim plausible on its face, and without the contracts or reference to specific language" in its amended complaint, plaintiffs have failed to do so. *Id.* In any event, the contract clearly establishes that plaintiffs' right to use "Club Accommodations" are not absolute or unlimited and, pursuant to the terms of the contract, are subject to certain restrictions [Doc. 12-1 ¶ 10]. Thus, the language of the contract also compels the conclusion that plaintiffs' claim for breach of contract arising out of some unspecified interference with these rights is inadequately pled.

Additionally, the Court notes that the attachment of this contract to defendant's motion does not require that the Court convert defendant's motion to one for summary judgment because the parties' contracts are integral to plaintiffs' breach of contract claim. *See Commercial Money Ctr. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

10

Tennessee law, "[i]mplied in every contract is a duty of good faith and fair dealing in its performance and enforcement." *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 667 (Tenn. 2013) (alteration in original) (quoting *Park Place Ctr. Enters. v. Park Place Mall Assocs.*, 835 S.W.2d 113, 117 (Tenn. Ct. App. 1992)). Generally, Tennessee courts "have expressed this principle as allowing the qualifying word 'reasonable' and its equivalent 'reasonably' to be read into every contract." *Id.* at 661 (citing *Pylant v. Spivey*, 174 S.W.3d 143, 152 (Tenn. Ct. App. 2003); *Hathaway v. Hathaway*, 98 S.W.3d 675, 678–79 (Tenn. Ct. App. 2002); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995)).

A breach of this covenant is not a cause of action in and of itself, but it may serve as the basis for a breach-of-contract claim. *Jones v. LeMoyne-Owen Coll.*, 308 S.W.3d 894, 908 (Tenn. Ct. App. 2009). "[T]hus, 'absent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing.'" *Brooks v. Wells Fargo Bank, N.A.*, No. 3:12-0821, 2014 WL 345737, at *4 (M.D. Tenn. Jan. 30, 2014) (quoting *Ike v. Quantum Serv. Corp.*, No. 11-02914, 2012 WL 372132, at *5 (W.D. Tenn. Aug. 27, 2012) (citing *Berry v. Mtg. Elec. Reg. Sys.*, No. W2013-00474-COA-R3CV, 2013 WL 5634472, at *7 (Tenn. Ct. App. Oct. 15, 2013)).

Because plaintiffs have failed to adequately plead a breach-of-contract claim, there can be no cause of action arising from an alleged breach of the implied covenant of good faith and fair dealing. *See Brooks*, 2014 WL 345737, at *4; *Weese v. Wyndham Vacation Resorts*, No. 3:07-cv-433, 2009 WL 1884058, at *5 (E.D. Tenn. June 30, 2009) ("[A claim

for a breach of the implied covenant of good faith and fair dealing] is just 'part and parcel' of the breach of contract claim."); *Jones*, 308 S.W.3d at 908. Specifically, because, as discussed *supra*, the complaint fails to offer language of the contract or otherwise allege facts defining the contractual obligations which defendant allegedly failed to perform, it follows that the complaint fails to allege that defendant has breached the parties' contracts by failing to carry out its performance of an obligation in "good faith" or "reasonably." *See Dick Broad. Co.*, 395 S.W.3d at 661.

The Court also notes that plaintiffs' allegations directed toward defendant's lack of good faith in the *formation* of the parties' contracts [Doc. 10 ¶ 167] do not state a claim for breach of the implied covenant of good faith and fair dealing. *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996) ("[I]t should be noted that the common law duty of good faith in the *performance* of a contract does not apply to the formation of a contract."). Accordingly, plaintiffs' breach of contract claim relying upon a breach of the duty of good faith and fair dealing must also fail.

In sum, plaintiffs' claim for breach of contract is **DISMISSED** for failure to state a claim upon which relief may be granted.

### B. Anticipatory Breach

Under Tennessee law, in addition to causing an actual breach of a contract, "[a] party to a contract can take certain actions or make certain statements that repudiate it" or breach it anticipatorily. *UT Med. Grp. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007). A party

can repudiate a contract in two ways: (1) by "commit[ting] a voluntary act which renders the party unable or apparently unable to perform the contract." *Id.* (quoting *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn. Ct. App. 1991)), and (2) through "words and conduct [that] amount to a total and unqualified refusal to perform the contract." *Id.* (quoting *Wright*, 832 S.W.2d at 545); *see also Crouch v. Pepperidge Farm, Inc.*, 424 F. App'x 456, 459 (6th Cir. 2011). "The repudiation must be absolute or unequivocal." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 599 (6th Cir. 2004) (citations omitted). "No precise set of words is necessary to constitute an unequivocal repudiation," *id.*, but "an indication that more negotiations are sought is not a total and unqualified refusal to perform." *Vogt*, 235 S.W.3d at 120 (citing *Palmiero v. Spada Distr. Co.*, 217 F.2d 561, 565 (9th Cir. 1954)). Also, the Sixth Circuit has held that "once reasonable grounds exist to believe that the other party to a contract may not perform, a party may demand reasonable assurance of performance, and if such assurance is not forthcoming within a reasonable time, may treat the failure to provide assurance as a breach." *Markowitz & Co. v. Toledo Metro. Hous. Auth.*, 608 F.2d 699, 705 (6th Cir. 1979).

Plaintiffs contend that defendant's communicating its intention to freeze plaintiffs' account in counsel's February 9, 2017 letter [Doc. 10-1] and defendant's failure to provide assurance of performance after plaintiffs' counsel's response to that letter constitute anticipatory breaches or repudiations of the parties' contract. However, as the Court has discussed, plaintiffs have failed to allege facts which plausibly allege and adequately define

13

defendant's obligations under the parties' contracts. As was the case with their breach-of-contract claim, this proves fatal to plaintiffs' claim for anticipatory breach—indeed, none of the factual allegations allow the Court to conclude that defendant totally and unequivocally refused to perform (or failed to provide adequate assurances that it would perform) a particular obligation imposed upon it in a contract between the parties.[5] While plaintiffs allege defendant stated an intention to freeze plaintiffs' account and then failed to adequately assure plaintiffs that they could continue to use their account per their request, they do not allege facts sufficient to allow a reasonable inference that the contract obligated defendant to perform differently. In other words, plaintiffs do not plausibly allege that these actions constituted a refusal to perform the contract, which is essential in pleading a claim for anticipatory breach. *See Vogt*, 235 S.W.3d at 120. Accordingly, plaintiffs' claim for anticipatory breach is **DISMISSED** for failure to state a claim upon which relief may be granted.[6]

---

[5] Moreover, the Court notes, as defendant provides in its motion and accompanying memorandum [Docs. 13, 18], that multiple Tennessee chancery courts have concluded, under analogous facts that the February 9, 2017 letter by defendant's counsel did not amount to an anticipatory breach as a matter of Tennessee law [Doc. 18 p. 6–7 (citing *Boy v. Wyndham Worldwide Operations, Inc.*, No. 18-839-III (Tenn. Ch. Jan. 3, 2019) (attached to defendants' motion as Doc. 12-2))].

[6] The Court also acknowledges the conclusory nature of plaintiffs' allegations with respect to damages [*see* Doc. 10 ("Plaintiffs have been damaged by WVR's actions.")]. *Cf. Hibbett Sporting Goods, Inc. v. ML Georgetown Paris*, No. 5:18-524-DCR, 2020 WL 1170220, at \*3–4 (E.D. Ky. Mar. 11, 2020).

**IV. Conclusion**

For the reasons discussed herein, defendants' motion [Doc. 12] is **GRANTED**. Plaintiff's claims for breach of contract and anticipatory breach are hereby **DISMISSED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE